IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>$535,340.00 UNITED STATES CURRENCY,<br><br>                Defendant. | Civil No. 8:24CV384<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the Defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1.    This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2.    Defendant property is $535,340.00 United States currency seized by law enforcement from a vehicle operated by Ivan Young Lee, Jr. ("Lee") during a traffic stop on I-80 at 60th street, Omaha, NE on March 17, 2023.

3.    The U.S. Customs and Border Protection currently has custody of the Defendant property.

### Jurisdiction and Venue

4.    This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property, $535,340.00 United States currency, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8. On March 17, 2023, Douglas County Sheriff's Office ("DSCO") Deputy Jason Bargstadt ("Deputy Bargstadt") was on duty on westbound Interstate 80 near 42nd Street in Omaha, Nebraska.

9. At approximately 1:22 p.m. Deputy Bargstadt observed a 2022 Toyota RAV4 ("RAV4") traveling 77 mph in a 65 mph zone.

10. Deputy Bargstadt subsequently initiated a traffic stop of the RAV4.

11. Deputy Bargstadt made contact with the driver and sole occupant of the RAV4, which was Lee.

12. Lee provided his New York state driver's license to Deputy Bargstadt.

13. The RAV4 was registered to PV Holding Corp and was rented to Lee.

14. According to the rental paperwork provided by Lee, the RAV4 was due to be dropped off in Los Angeles on March 21, 2023.

15. Lee stated he was driving from Buffalo, NY to California to visit a couple of friends.

16. Lee stated he was planning on dropping the rental car off at Los Angeles Airport after seeing his friends and then flying back to New York.

17. Lee stated he planned on making it to California by March 19, 2023.

18. The rental contract provided by Lee showed the vehicle to be due back on March 21, 2023, which would only give Lee one day to see friends in California.

19. Deputy Bargstadt observed Lee to be fidgety and overly friendly during initial contact.

20. Based on his training and experience, Deputy Bargstadt became suspicious of criminal activity in light of the long drive across the country, short stay in California, and the one-way flight back to New York after only seeing friends for one day.

21. Deputy Bargstadt messaged DCSO Sgt. Eric Olson (Sgt. Olson") to request that he backup Deputy Bargstadt.

22. A short time later, Sgt. Olson arrived to talk with Lee while Deputy Bargstadt conducted a record check on Lee.

23. Sgt. Olson asked Lee what he does for a living and Lee picked up a tobacco vaporizer and stated he is a distributor.

24. Sgt. Olson asked if he owned a shop and Lee confirmed he owns a store called "Smoke".

25. Upon hearing Lee owned a vape shop, Sgt. Olson asked if he sold THC or any other marijuana products.

26. Lee explained he did not, and New York only gives out so many licenses to sell recreational marijuana.

27. Sgt. Olson asked Lee if he possessed any marijuana or other illegal narcotics and Lee advised he did not.

28. Lee's claim that he owned a store called "Smoke" could not be verified through the New York Secretary of State.

29. After completing the records check, Deputy Bargstadt returned to the rental car and asked Lee if there was anything illegal in the rental car in which Lee stated there was not.

30. Deputy Bargstadt specifically asked about guns, drugs, and large amounts of United States currency.

31. Lee said no originally and then paused for a while when Deputy Bargstadt specifically asked if there was more than $10,000.00 in the car.

32. Lee stated he may have more than $10,000.00 and that his business gets "dinged" when he uses banks.

33. Based on his training and experience, Deputy Bargstadt knows that individuals involved in trafficking money and drugs will lie, minimize, and downplay large amounts of currency being transported across the United States and avoid banks.

34. Deputy Bargstadt asked Lee approximately how much money he had, and Lee eventually stated he may have around $100,000.00.

35. Lee denied consent for a search of the rental car.

36. Lee was then placed inside Deputy Bargstadt's cruiser while Sgt. Olson deployed his certified narcotics detector K-9 "Shiva" for an exterior sniff of the rental car.

37. K-9 Shiva alerted and indicated to a drug odor coming from the rear of the rental car.

38. Deputy Bargstadt then advised Lee that a probable cause search would be conducted.

39. Deputy Bargstadt asked Lee if there was anything more than $100,000.00 in the car.

40. Lee responded there was not.

41. Lee stated the black luggage on the right side of the cargo area contained the U.S. currency.

42. Deputy Bargstadt opened the luggage and located a large sum of rubber-banded currency underneath a red blanket.

43. Deputy Bargstadt returned to his cruiser to grab his phone to take pictures of the currency when Lee informed Deputy Bargstadt that it was more than $100,000.00, and it was closer to $500,000.00.

44. Deputy Bargstadt and Sgt. Olson began searching the additional luggage in the cargo area of the rental car.

45. Another large amount of U.S. currency was located in a zippered divider of a charcoal-colored hard-sided suitcase.

46. The luggage was closed back up with the currency inside while Deputy Bargstadt and Sgt. Olson waited for a tow truck.

47. The RAV4 was towed to DCSO K9 sally port by Young's Towing.

48. Once at the sally port, CSI took photographs of the RAV4 and its contents, including the United States currency.

49. The United States currency was removed from the rental car and a discretionary sniff was conducted by K9 Shiva.

50. Prior to the United States currency being placed in the DCSO K9 sterile room, Sgt. Olson deployed K9 Shiva into the sterile room and directed her to search all of the lockers within the room.

51. K9 Shiva did not indicate or alert to any odor of narcotics being present in the DCSO K9 sterile room.

52. Deputy Andrew Kubik and Deputy Bargstadt then proceeded to place the United States currency in into two different lockers in the DCSO K9 sterile room, which were unknown to Sgt. Olson and K9 Shiva.

53. A short time later, Sgt. Olson redeployed K9 Shiva into the DCSO K9 sterile room and directed her to search the lockers within the room.

54. Sgt. Olson observed K9 Shiva search, alert, then indicate to the odor of narcotics.

55. Sgt. Olson was advised by Deputy Bargstadt that K9 Shiva indicated to one of the lockers containing currency.

56. Sgt. Olson redeployed K9 Shiva into the DCSO K9 sterile room and observed K9 Shiva search, alert, then indicated to the odor of narcotics.

57. Sgt. Olson was advised by Deputy Bargstadt that K9 Shiva indicated to the second locker containing currency.

58. K9 Shiva is not trained to alert or indicate to United States currency; K9 Shiva is only trained to alert and indicate to the odors of marijuana, cocaine, heroin, or methamphetamine.

59. The black luggage totaled $235,340.00 United States currency.

60. The charcoal-colored hard-sided suitcase totaled $300,000.00.

61. In total, law enforcement seized $535,340.00 in United States currency from Lee's RAV4.

62. Lee stated he would not be giving a statement to investigators about the money or its legitimacy.

63. Deputy Bargstadt seized the $535,340.00 United States currency as drug proceeds.

64. At the time of seizure, an iPhone and Acer laptop belonging to Lee were also seized.

65. At this point, law enforcement has been unable to extract any data from the phone or the laptop.

66. Law enforcement is attempting to use different technology in order to gain access.

67. The $535,340.00 in United States currency seized from a suspected drug courier showed it unlikely to be from a legitimate business.

## Claim for Relief

WHEREFORE the United States of America prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

SUSAN T. LEHR
United States Attorney

By:   s/ Kimberly C. Bunjer
KIMBERLY C. BUNJER, #20962
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail:  kim.bunjer@usdoj.gov